IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

v.                                                                              Criminal No. 3:04CR044-D

WILLIAM TED THOMPSON
aka INDIAN

## OPINION GRANTING MOTION FOR INVOLUNTARY ADMINISTRATION OF ANTIPSYCHOTIC MEDICATION FOR PURPOSE OF RESTORING COMPETENCY

Presently before the Court is the Government's motion seeking an order authorizing the involuntary administration of antipsychotic medication for the sole purpose of rendering the Defendant competent to stand trial pursuant to States v. Sell, 539 U.S. 166, 123 S. Ct. 2174, 156 L. Ed. 2d 197 (2003). After a hearing conducted in accordance with 18 U.S.C. §§ 4241 and 4247(d), the Court finds the motion is well taken and shall be granted.

*A. Factual Background*

After a hearing conducted on October 14, 2004, the Court determined that Mr. Thompson was suffering from a mental disease or defect that rendered him incompetent to stand trial. As a result, the Court ordered Mr. Thompson remanded to the custody of the Attorney General for hospitalization and further evaluation to determine whether his competency may be restored. At the conclusion of the medical evaluation, the attending physicians, psychologists and psychotherapists are of the opinion that Mr. Thompson is suffering from sever bipolar disorder with manic and psychotic features. The evaluating psychiatric staff are also of the opinion that "there is a substantial probability that Mr. Thompson's competency status can be restored with a period of treatment with antipsychotic medication." Since Mr. Thompson has repeatedly refused and/or failed take prescribed medications, the medical evaluators have recommended and the Government is now seeking

permission for the involuntary administration of antipsychotic medication pursuant to States v. Sell, 539 U.S. 166, 123 S. Ct. 2174, 156 L. Ed. 2d 197 (2003).

## B. The Sell Decision

The defendant, Dr. Sell, who was once a practicing dentist, had a long documented history of mental illness beginning in 1982. 539 U.S. at 169. In 1997, Sell was charged with submitting fictitious insurance claims for payment. Id. at 170. After ordering a psychiatric evaluation, the magistrate initially found Sell "currently competent" but noted the possibility of a future "psychotic episode." Id. Later, Sell was accused of intimidating a witness. Id. During the revocation hearing Sell lashed out and the magistrate revoked bail. Id. In 1999, Sell asked the court to reconsider his competency. Id. The magistrate subsequently found that Sell was "mentally incompetent to stand trial" and ordered hospitalization to determine whether there was a possibility that he could attain competency to stand trial. Id. at 171. While hospitalized, the staff recommended that Sell take antipsychotic medication which he refused. Id. The staff then sought permission to administer the medication against Sell's will. Id.

The magistrate found that Sell was dangerous and issued an order authorizing involuntary administration of antipsychotic drugs. Id. at 173. The district court held that the dangerous finding was clearly erroneous but permitted the involuntary medication finding that it was the only hope of rendering the defendant competent to stand trial. Id. at 174. A divided panel of the appeals court affirmed the district court's judgment. Id. The Supreme Court granted certiorari to determine whether the lower court erred in permitting involuntary medication for non-violent offenses. Id. at 175. The court defined the question presented as "whether the Constitution permits the Government to administer antipsychotic drugs involuntarily to a mentally ill criminal defendant– in order to

render that defendant competent to stand trial for serious, but nonviolent, crimes." Id. at 169. The court concluded that "the Constitution allows the Government to administer those drugs, even against the defendant's will, in limited circumstances." Id.

*C. Legal Standard*

Under the Due Process Clause of the Fifth Amendment a defendant "has a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs." Washington v. Harper, 494 U.S. 210, 221, 110 S. Ct. 1028, 1036, 108 L. Ed. 2d 178 (1990). The rule of law taken from Harper is that "the due process clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interests." 494 U.S. at 227. The Supreme Court's latest comment on the issue of involuntarily medicating defendants was Sell. Before a court may authorize administration of antipsychotic medication for the purposes of rendering a defendant competent to stand trial the court should consider whether there are Harper type factors that may otherwise justify involuntary treatment such as if the defendant is a danger to himself or others or if he is gravely ill. U.S. v. Evans, 293 F. Supp. 2d 668, 672 (W.D. Va. 2003) (citing Sell, 539 U.S. at 181-82). To support the involuntary administration of antipsychotic drugs to a nonviolent defendant, the Government must demonstrate that (1) important government interests are at stake; (2) involuntary medication is substantially likely to render the defendant competent to stand trial, and substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist in his defense; (3) involuntary medication is necessary to further the government's interests, and less intrusive means are unlikely to achieve substantially the same results; and (4) the administration of the drugs is medically appropriate. Sell, 539 U.S. at 180-82. Neither the Supreme Court nor the

Fifth Circuit have addressed the standard of proof that attaches to Sell hearings. U.S. v. Ghane, 392 F.3d 317, 319 (8th Cir. 2004). However, the Second Circuit has applied a clear and convincing standard in U.S. v. Gomes, 387 F.3d 157, 160 (2d Cir. 2004) (ordered involuntary treatment), cert. denied, 125 S. Ct. 1094, 160 L. Ed. 2d 1081 (2005).

*D. Analysis*

Here, the Court heard oral testimony from Doctor Bryon Herbel, a forensic psychiatrist. Doctor Herbel stated that "Mr. Thompson has been able to function adequately in the open population of the Mental Health Department without engaging in behavior that would pose a risk of being dangerous to himself or others. There is no convincing evidence that Mr. Thompson poses a substantial risk of dangerousness in the current conditions of his confinement." See U.S. v. Colon, 2003 WL 21730603 at *4 (S.D.N.Y. Jul. 21, 2003) (a defendant's continued dangerousness may separately support the involuntary administration of medication under Harper). Though the doctor maintained that Mr. Thompson was not aggressive or hostile, he described the Defendant as loud and uncooperative, with exhibited inappropriate sexual behavior. Absent Harper factors, the Court must analyze the issue under Sell. See Gomes, 387 F.3d at 160 (Sell applies when the sole purpose of chemical treatment is to render a defendant competent for trial).

1. Important Governmental Interests

First, the Court must identify the important government interests involved. The Sell court recognized the government's important interest "in bringing to trial an individual accused of a serious crime." 539 U.S. at 180. The court did not define a "serious crime." However, other courts have considered the issue and relied on the length of sentencing to determine if a crime is "serious." See U.S. v. Evans, 404 F.3d 227 (4th Cir. 2005) (threatening to murder a federal judge is a serious

crime); U.S. v. Leveck-Amirmokri, No. EP-04-CR-0961-DB, 2005 WL 1009791 at *4 (W.D. Tex. Mar. 10, 2005) (threatening the life of the President is a serious crime); U.S. v. Barajas-Torres, No. EP-03-CR-2011KC, 2004 WL 1598914 at *3 (W.D. Tex. July 1, 2004) (illegal reentry is not a serious crime and involuntary treatment is not warranted). The Supreme Court has directed that "the penalty authorized for a particular crime is of major relevance in determining wether it is serious or not." Duncan v. Louisiana, 391 U.S. 145, 154-55, 157-58, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968). In the context of the Sixth Amendment right to trial by jury, the high court has also held that a crime carrying a sentence of six months or less is presumptively petty. Lewis v. U.S., 518 U.S. 322, 326, 116 S. Ct. 2163, 135 L. Ed. 2d 590 (1996).

Mr. Thompson has been charged in a six count indictment with various incidents of fraud, laundering money and misuse of social security number. Each count carries with it possible imprisonment of substantial years. Therefore, the crimes of which Mr. Thompson has been accused may appropriately be considered serious.

This, however, does not end the inquiry. Rather, Sell directs the court to consider other factors to determine if important government interests are at stake. "Special circumstances may lessen the importance" of the Government's interest. Sell, 539 U.S. at 180. For example, the potential of future confinement would argue against the need for prosecution; the defendant's refusal to take medication could lengthen confinement in a mental institution thereby diminishing the risk of releasing him without punishment; or, the Government's interest might be obviated if the defendant had been confined for a significant amount of time for which the defendant would receive credit toward any sentence ultimately imposed. Id. at 180.

During the hearing the Defendant presented no proof or argument of any "special

circumstances" that would lessen the Government's interest in having the Defendant stand trial for the serious crimes of which he is charged. As acknowledged in Sell, the Government has an interest in "protect[ing] through application of the criminal law the basic human need for security." Id. at 180. As such, important governmental interests are implicated by the facts of this case.

    2. Substantially Likely to Restore Competency Without Impairing Side Effects

Sell's second prong requires the Court to conclude that "involuntary medication will significantly further" the important governmental interests. Id. at 181. The Government must demonstrate that "administration of the drugs is substantially likely to render the defendant competent to stand trial [and] . . . that administration of the drugs is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair." Id.

Mr. Thompson has been diagnosed with sever bipolar disorder with manic and psychotic features. He is currently incapable of assisting with a defense precluding his prosecution. The medical evaluation indicates several oral forms of mood stabilizing medications are available to treat dipolar disorder. The primary treatment consists of "various forms of lithium and the anticonvulsants valproic acid and carbamazepine . . . [which are] often augmented by oral antidepressant medications to target depressive symptoms or first generation antipsychotic medications to target psychotic or severe manic symptoms." In lieu of a bipolar patient complying with an oral regimen of medication, the medical evaluation indicates that "the only medication treatment that can be administered involuntarily over an extended period of time is a long acting injection of antipsychotic medication." Because Mr. Thompson has repeatedly refused to comply with oral medication, Dr. Herbel proposed, during the hearing, to treat the Defendant with an

injection of 25 milligrams of long acting Risperidone every two weeks. Presumably based on the Doctor's review of two studies involving 61 incompetent defendants 45 of whom were involuntarily treated with psychotropic medication, with this treatment Mr. Thompson has approximately 87 percent possibility of being restored to competency.

As for side effects, Dr. Herbel offered that treatment with "antipsychotic medication has minimal to no adverse effect on cognition of individuals suffering from psychotic disorders." Further, the evaluating doctors assert "there is clear evidence that treatment with antipsychotic medication actually improves the performance of individuals suffering from schizophrenia and related disorders." However, there is a slight possibility that some patients, possibly as many as 30 percent, may experience some degree of "tardive dyskinesia" or abnormal involuntary muscular movements. See Ghane, 392 F.3d at 320 (denied authorizing involuntary medication finding that a five to ten percent chance of restored competency does not amount to a substantially likelihood). Dr. Herbel stated that any muscular discomfort is not permanent and can be controlled with other medication. Additionally, there is a slight risk of developing diabetes. But, Dr. Herbel explained, the risk is much higher with other medication and estimated that if treated with the long acting Risperidone the Defendant's chance of developing diabetes is well below seven percent.[1] Ultimately, despite the slight risks, the doctors have concluded that involuntary treatment with antipsychotic medication will be substantially likely to render the Defendant competent to stand trial and substantially unlikely to have side effects that will interfere significantly with his ability to assist in his own defense.

---

[1] This percentage does not take into consideration those medicated individuals who would have naturally developed diabetes.

Having read the lengthy medical evaluation and heard Dr. Herbel's testimony, it is clear the doctors are convinced that Mr. Thompson can be restored to competency with minimal to no side effects. After years of exhibited mental deficiencies, if left untreated the Defendant will not spontaneously become competent to stand trial. The only method by which his competency may be restored is through routine and regulated medication. Doctor Herbel proposed the long acting injectable antipsychotic medication, "Risperdal Consta 25 mg every two weeks" based on the Defendant's prior positive response to the drug. The doctors add that lithium may also be administered "depending upon clinical response and tolerance." See Evans, 404 F.3d at 227 (requiring the medical report to specify the particular proposed medication and a reasonable dosage range and relate the treatment plan to the defendant's medical condition in order to satisfy Sell's second and fourth factors). Importantly, Doctor Herbel testified that while hospitalized in a state mental hospital in 2004, Mr. Thompson was treated with long acting Risperdone without suffering any of the potential side effects. Absent any contradictory proof, the proposed treatment is sufficient to satisfy Sell's second prong. Hence, the Court finds that the antipsychotic medication is substantially likely to restore Mr. Thompson's competency without any adverse side effects that will interfere with his ability to assist with his own defense.

### 3. Medically Necessary or Less Intrusive Treatments

The third inquiry requires the court to determine if involuntary medication is necessary to further the governmental interest. Sell, 539 U.S. at 181. When considering the third factor, the court "must find that any alternative, less intrusive treatments are unlikely to achieve substantially the same results." Id. Before ordering involuntary medication the court must "consider less intrusive means for administering the drugs" such as "a court order to the defendant backed by the contempt

power." Id.; Gomes, 387 F.3d at 162-63 (finding alternative treatments would be futile in light of the defendant's condition, his repeated refusal of chemical treatment and indication that he will not cooperate under any circumstances).

Here, the evaluators admit that psychoeducation can be a "valuable treatment intervention for patients with bipolar disorder by improving the patient's adherence to the recommended treatment with psychotropic mediation, as well as helping the patient cope with residual affective symptoms that do not respond to the medication." They also state that there is "no compelling" evidence that psychoeducation alone is better than treatment with antipsychotic medication. Further, the doctors have already determined that Mr. Thompson is not currently competent. The doctors note that "currently he cannot be engaged in any rational discussion to engage in any type of psychotherapy or educational task." Therefore, the doctors by implication assert that the Defendant is not a candidate for psychoeducation treatment. Having personally witnessed the Defendant's testimony and behavior, the Court agrees.

Based on the doctors' opinions, the Defendant's repeated refusal to comply with oral medication and his inability to communicate effectively, there is likely no less intrusive means to render him competent. Because he has consistently demonstrated he is incapable of sustaining a coherent conversation, a court order would likely not have any effect on the Defendant's propensity to comply with oral medication. While testifying, the Defendant himself refused to decisively agree that if given the opportunity he would voluntarily comply with an oral regimen of medication. Dr. Herbel explained, that the Defendant had a documented pattern of initially complying with oral medication but then would complain about side effects and ultimately disrupt or discontinue the treatment. Additionally, as the evaluators have indicated, if the Court were to issue an order and the

Defendant continued to be noncompliant further proceedings would be necessary causing even greater delay in initiating the recommended treatment. Hence, in light of the evidence and argument, there is no less intrusive means to restore the Defendant's competency. Thus, involuntary medication appears to be medically necessary to further the governmental interests and less intrusive means are unlikely to achieve substantially the same results.

### 4. Medically Appropriate

Lastly, the Court must determine that "administration of the drugs is medically appropriate, i.e., in the patient's best medical interest in light of his medical condition." Sell, 539 U.S. at 181. As has been discussed, Mr. Thompson is bipolar. According to the evaluators, medical guidelines describe dipolar disorder as a "lifelong illness" commonly responding to treatment with lithium and/or antipsychotic drugs. Clearly the treatment proposed for Mr. Thompson has been thoroughly documented and proven successful for managing bipolar disorder. Despite defense counsel's valiant effort, there is no indication that the suggested treatment would be detrimental to Mr. Thompson's health given his medical condition. To the contrary, the proposed administration of medication is consistent with American Psychiatric Association Guidelines and is likely the only means to improve the Defendant's medical condition. See U.S. v. Morris, No. CR.A. 95-50-SLR, 2005 WL 348306 at *6 (D. Del. Feb. 8, 2005) (finding the guidelines persuasive and ordering involuntary treatment); U.S. v. Kimball, No. CR03-1025, 2004 WL 3105948 at *5 (N.D. Iowa Mar. 23, 2004) (defendant filed false reports of possible attack on mass transit system, court permitted involuntary medication). Though there is some risk associated with the proposed treatment, the medical staff will carefully monitor the side effects and take appropriate steps by altering the dose or using other medication to lessen adverse effects. Thus, in accordance with the above discussion and the doctors'

recommendation involuntary medication is medically appropriate and in the Defendant's best medical interest given his condition.

*E. Conclusion*

Since the Defendant has not been deemed dangerous to himself or to others and based on the facts and arguments, Mr. Thompson's circumstances appear to fit within all four <u>Sell</u> factors which permit involuntary administration of antipsychotic drugs for the sole purpose of rendering him competent for trial. The Government has an important interest in timely prosecuting the Defendant for the serious crimes of which he has been accused. Moreover, the Court is not aware of any "special circumstances" that would lessen the Government's important prosecutorial interest. The proposed treatment is substantially likely to restore the Defendant's competency without any adverse side effects that would interfere with his ability to assist in his own defense. To the contrary, involuntary medication would only improve the Defendant's ability to communicate with his counsel and, thereby, ensure a fair trial. Treating the Defendant is likely the only means to further the Government's interest and less intrusive alternative treatments are unlikely to achieve substantially the same results. Finally, the treatment of bipolar disorder with the proposed drugs is medically appropriate and there is no indication that such treatment is contraindicated given Mr. Thompson's condition. Accordingly, the Court finds by clear and convincing evidence that involuntarily medicating the Defendant with antipsychotic drugs as discussed above, but in more detail in the medical evaluation, should be allowed in order to restore his competency to stand trial. Notwithstanding, the Court will allow Mr. Thompson the initial opportunity to voluntarily comply with oral medication. In the event that Mr. Thompson refuses or fails to comply with oral treatment, the medical staff at FCC Butner are authorized to involuntarily administer treatment.

A separate judgment in accordance with this opinion shall issue this day.

This the 21th day of June 2005

/s/ Glen H. Davidson
Chief Judge